Christian, J.
The scale of depreciation authorized by the statute, whether the “gold standard” or the “pro • perty standard” be adopted, is applied only where, according to the true understanding and agreement of the parties, the contract is to be fulfilled and performed in Confederate States treasury notes, or was entered into with reference to such notes as a standard of value.
*813 In the case before us, there is nothing in the contract of sale, which is in writing, to indicate the kind of currency in which it was to be fulfilled or performed.
The contract of Tams was to pay for the tract of land sold by Brannaman, “the sum of twenty-eight hundred dollars to be paid by Tams in the following manner: One thousand dollars cash in hand, and the remainder in three annual payments of six hundred dollars each.” Both Tams and Brannaman are examined as witnesses Tams, both in his answer and deposition, declares that he regarded the sale as one for Confederate money, and expected to discharge it in that currency. Brannaman, on the other hand, is very emphatic in his declarations, that he sold his land for good money; that it had cost him more before the war than the price at which he sold it to Tams. Nor does any evidence in the cause, outside of the contract of sale, throw any light upon the subject.
It cannot be said, therefore, that it appears, in this case, that it was the true understanding and agreement of the parties, (i. e. of both parties,) that the contract was to be fulfilled or performed in Confederate treasury notes, or was entered into with reference to such notes as a standard of value. It is only in such case that the scale of' depreciation can be applied.
"When the contract of the parties sheds no light upon the question as to the kind of currency in which it is k> be performed or fulfilled, the price for which the land is-sold is a most important element to be considered in determining the character of the contract. In Meredith v. Salmon, 21 Gratt. 762, great stress is laid upon the fact,, in the able opinion of Judge Staples, in which the whole, court concurred, that while the real value of the land was only six thousand dollars, the agreed value or contract price was thirty thousand dollars.
*814 In Morgan’s adm’x v. Otey, 21 Gratt. 619, the price for which the property sold was also considered a most important element in determining the character of the contract. In that case this court said: “ The property was worth at least $1,200 in gold at the day of sale. It was sold for $3,700; while $1,200 in gold was worth on the day of sale $14,000 yn Confederate currency. It is impossible to conclude, except upon the most explicit evidence, that any man of common discretion would sell his land for $3,700 in Confederate money when it was worth upwards of $14,000 in that currency.”
In the case before us the conclusive and overwhelming testimony is, tnat the land was sold for no more than its value in gold. In fact, Brannaman paid in 1854 the sum of $25 per acre, and put upon it. valuable improvements, amply sufficient to bring it up to the price which Tams agreed to pay, to wit: $28 per acre.
The form of the bonds, which were written by Tams and accepted by. Brannaman, does not in any manner affect my conclusions. The fact that the bonds of the three deferred annual payments are made payable in “bankable currency,” does not furnish, as against the predominating evidence in the cause, any key to the ■“true understanding and agreement of the parties.” These words were not used in the contract of sale; they were put in the bonds by Tams.
In point of fact, gold and silver, Virginia treasury notes, Virginia bank notes, and the notes of the banks of other States, as well as Confederate States treasury notes, may all be regarded as “ bankable currency; that is currency that would have been received at the banks on deposite, or for the payment of debts due to the banks.
In my view of the case, the price for which the land sold, and the weight of the evidence, shows, that the con *815 tract was not one to be fulfilled or performed in Confederate treasury notes, but was a sale for a sound currency. But if it can be regarded as a Confederate contract, then I think it is clear that in this case the “ most just measure of recovery ” is the value of the land; which the evidence conclusively shows to be certainly not less than the contract price. As to the cash payment of $1,000, inasmuch as the appellant had the privilege of paying that amount in Confederate currency, and held it at the request of the appellee, he must be regarded to that extent as a borrower of that amount of Confederate money, and that amount ought to be scaled at its gold value.
IJpon the whole case, I am of opinion that there is no ■error in the decree of the Circuit court, and that it ought to be affirmed.
Moncure, P. and Staples, J., concurred in the opinion ■of Christian, J.
Anderson and Bouldin, Js., dissented.
Decree appirmed.